RECEIVED

USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE __10 / 23 / 13__

UNITED STATES DISTRICT COURT                 b
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

SANDRA GOBERT,                    CIVIL ACTION
     Appellant                    NO. 2:12-CV-02103

VERSUS

MICHAEL ASTRUE, COMMISSIONER      JUDGE JAMES T. TRIMBLE
OF SOCIAL SECURITY,               MAGISTRATE JUDGE JAMES D. KIRK
     Appellee

          REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

     Sandra Gobert ("Gobert") filed an application for supplemental

security income ("SSI") benefits on April 11, 2005 (protective

filing date) (Tr. pp. 54, 172),[1] alleging a disability onset date

of December 6, 2005 (Tr. p. 364)[2] due to "severe neck, back,

shoulder, and arm pain, degenerative disease, chronic cervical

myofascial pain syndrome, chronic lumbosacral myofascial pain

syndrome, intermittent left cervical radiculopathy, intermittent

left lumbosacral radiculopathy, minimal adjustment disorder" (Tr.

p. 165).  That application was apparently denied by the Social

Security Administration ("SSA") (the denial of benefits is not

included in the administrative record).[3]

---

     [1] The Social Security Administration failed to include
Gobert's 2005 application for benefits in the administrative
record.

     [2] Gobert's disability onset date was amended at her March
31, 2011 administrative hearing from April 11, 2005 to December
6, 2005 (Tr. p. 364).

     [3] Gobert has filed prior claims for Social Security
benefits.  Gobert filed an application for SSI in 1999, an ALJ
found she was not disabled through February 27, 2002, and she did
not appeal (Tr. p. 54).  Gobert filed an application for SSI in
January 2003, an ALJ found she was not disabled through September
15, 2004, and she did not appeal (Tr. p. 54).  Gobert next filed
the current application for benefits.

A de novo hearing was held before an administrative law judge ("ALJ") on May 15, 2008 at which Gobert appeared with her attorney and a vocational expert ("VE") (Tr. p. 349).  The ALJ found that, although Gobert suffers from severe impairments of degenerative joint disease, headaches, obesity, and depression (Tr. p. 57), she had the residual functional capacity to perform the full range of sedentary work (Tr. p. 60).  The ALJ concluded that Gobert could still perform her past relevant work as a receptionist and, therefore, was not under a disability at any time from April 11, 2005 through the date of his decision on July 17, 2008 (Tr. pp. 64-65).

In June 2010, the Appeals Council reviewed the ALJ's decision and reversed it, finding that Gobert cannot perform her past relevant work as a receptionist as it is described in the Dictionary of Occupational Titles ("DOT") and as described by Gobert (Tr. pp. 67-68).  The Appeals Council remanded Gobert's case to the ALJ with instructions for him to update the medical evidence from Gobert's treating sources, further evaluate Gobert's mental impairment pursuant to 20 C.F.R. § 416.920a, further consider Gobert's maximum residual functional capacity with appropriate rationale to support assessed limitations and taking into consideration Gobert's moderate functional limitations in concentration, persistence or pace, and obtain evidence from a VE to clarify the effect of Gobert's limitations on her ability to work and to specify what jobs Gobert can perform (Tr. p. 68).

On remand, a supplemental hearing was held before a different

ALJ on May 9, 2011 at which Gobert appeared with her attorney, a VE, and two medical experts ("ME") (Tr. p. 380). The ALJ found that, although Gobert suffers from morbid obesity, she has the residual functional capacity to perform sedentary work except that she must be able to alternate sitting and standing periodically or at will, she requires the use of a cane one to two times a week to assist in ambulating, she is never able to balance, she occasionally is able to stoop, kneel, crouch, and crawl, she occasionally is able to engage in overhead work activity, she occasionally is able to climb ramps and stairs, she is never able to climb ladders, ropes, and scaffolds, and she must avoid concentrated exposure to cold or humidity (Tr. pp. 13, 16). The ALJ further found that Gobert cannot perform any past relevant work, was 41 years old when she filed her application in 2005, and has at least a high school education (Tr. p. 19). The ALJ concluded that Gobert can work as a sorter or a paramutual ticket checker and, therefore, was not under a disability as defined in the Social Security Act from April 11, 2005 through the date of his decision on July 11, 2011 (Tr. p. 20).

Gobert requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4), and the ALJ's decision became the final decision of the Commissioner.

Gobert next filed this appeal for judicial review of the Commissioner's final decision. Gobert raises the following issues for review on appeal:

> 1. The ALJ's finding that Gobert's impairments of degenerative disc disease and depressive disorders are

3

nonsevere is an error of law and unsupported by substantial evidence.

2. The ALJ's hypothetical question to the VE is defective and, therefore, the VE's responses cannot support a finding of not disabled.

3. The ALJ erred in failing to find that Gobert's prescribed medication resulted in an additional non-exertional limitation which reduced the range of work she can perform.

4. The ALJ failed to comply with social security ruling SSR 00-4p.

## Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3). The earliest month for which an eligible SSI claimant can receive benefits is the month following the month his application was filed, 20 C.F.R. § 416.335, or the month following the month during the pendency of the application that the claimant meets all the eligibility requirements, 20 C.F.R. § 416.330(a).

## Summary of Pertinent Facts

### 1. Medical Records

Gobert was 48 years old at the time of her May 9, 2011

4

supplemental hearing (Tr. p. 158), 5'5" tall, weighed 268 pounds (Tr. p. 387), has a high school education (Tr. p. 267), and has past relevant work as a receptionist (1991-1999), a cashier (1990), and a housekeeper for a hotel chain (1990) (Tr. p. 166).

Gobert had an MRI on May 31, 2005, which showed degenerative changes of the lumbar spine at L4/5 (lateral disc protrusion causing mild left neural foraminal narrowing) and L4/5 and L5/S1 (mild lateral facet arthritis) (Tr. p. 185).

In January, June and September 2005, Gobert was prescribed Diovan, Depakote, Lexapro, Flexeril, and Neurontin for depression, lower back pain, and hypertension (Tr. pp. 203-207, 210-211). In December 2005, Gobert was treated in the emergency department at Moss Regional Hospital for epigastric pain; she weighed 247 pounds (Tr. p. 188). In the outpatient clinic, Gobert was noted to not be taking her Diovan (for hypertension) which was prescribed, had depression for which she was prescribed Depakote and Lexapro, had shoulder, neck and lower back pain (after a moving vehicle accident) for which she as prescribed Neurontin and Flexeril, she was instructed on a diabetic diet, was instructed to follow an 1800 calorie per day diet, and was provided physical therapy of her choice three times per week (Tr. pp. 201-202).

In October 2005, Gobert was evaluated by a counselor and medications were recommended (Tr. pp. 255-270). Also in October 2005, Gobert was evaluated by Dr. Bruce Wiley, a psychiatrist, who found Gobert's mood was unhappy, her affect was labile, her memory was poor, she had mood disorder due to a general medical condition

and depressive disorder (Axis I), chronic neck/back/leg pain due to car accidents, had a hysterectomy, had hypertension, and had migraine headaches (Axis III), had problems with a primary support group, her social environment, and finances (Axis IV), and had a GAF of 60 (Axis V) (Tr. pp. 251-253).   Dr. Wiley prescribed Cymbalta for her depression and some pain, as well as counseling (Tr. p. 254).

In July 2006, Gobert was treated in the Moss Regional Medical Center emergency department for lower back pain; she was diagnosed with lumber musculoskeletal pain (Tr. pp. 213-216).   In September 2006, Gobert complained of recurrent palpitations and was diagnosed with palpitations and hypertension (Tr. pp. 221-222).   In September and October 2006, Gobert was advised to quit smoking and educated about hypertension (Tr. p. 218); she weighed 257 pounds (Tr. p. 218).

In January 2007, Dr. Wiley (psychiatrist) noted that Gobert found Cymbalta worked better than Lexapro (Tr. p. 248).   Dr. Wiley also found that Gobert was obese, her mood was dysphoric, and her GAF was 58 (Tr. pp. 248-250).   In July 2007, Gobert's mood was improved, but her GAF was still 58 (Tr. pp. 245-246).

In April and August 2007, Gobert was treated for chronic neck and back pain and prescribed Toradol; in August weighed 260 pounds (Tr. pp. 226-231).   In November 2007, Gobert suffered a muscle spasm in her back from bending over and was prescribed Toradol by the emergency department (Tr. p. 234).   In the outpatient clinic, in November 2007, Gobert weighed 265 pounds, her blood pressure was

6

153/81, and she has lower back pain (Tr. p. 238). Gobert was prescribed Lyrica, Flexeril, and Melopicam for her back pain, and Depakote and Cymbalta for depression (Tr. p. 238).

In the ophthalmology clinic at Moss Regional Medical Center, Gobert was noted to have borderline diabetes mellitus, her vision was 20/20 and 20/25 individually, and she was prescribed glasses (Tr. p. 237).

In February 2008, Gobert complained that she was out of Percocet for her back pain; she was prescribed Lyrica and Flexeril for back pain and Depakote and Cymbalta for depression (Tr. p. 235-236).

Also in February 2008, Craig D. Waggoner, a medical psychologist, evaluated Gobert and found that she had a major depressive disorder (Axis I), a GAF of 70 (Axis V),[4] a prognosis of

---

[4] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Axis I refers to clinical syndromes, Axis II to developmental disorders and personality disorders, Axis III to physical disorders and conditions, Axis IV to psychosocial stressors, and Axis V to the global (overall) assessment of functioning. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-35 (4th ed. 2000) ("DSM-IV-TR").

The Global Assessment of Functioning, or GAF, score represents Axis V of the Multiaxial Assessment system. The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). GAF is a standard measurement of an individual's overall functioning level. The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness. The first number indicates the patient's current GAF, while the second number indicates the highest score reported in the previous year. DSM-IV-TR at 32-34. The GAF scale goes from 0-100: a score of 61-70 represents some mild symptoms or some difficulty in social,

fair, and needed to learn to increase her self-management of pain, continue counseling, and continue taking Cymbalta (Tr. pp. 243-244).  Waggoner noted that Gobert was overweight and limited her activity due to chronic neck and back pain (Tr. p. 243).  In August 2008, Waggoner found Gobert was overweight and unhappy, and had a GAF of 58 (Tr. pp. 277-278).  In February 2009, Gobert's GAF was still 58; Waggoner continued Gobert's medications and counseling (Tr. pp. 274-276).

In March 2009, Gobert weighed 249 pounds and her blood pressure was 127/72; she was prescribed Percocet, Flexeril, and Lyrica for lower back pain (Tr. p. 299).  Gobert was found to not be a candidate for back surgery (Tr. p. 302).  In April 2009, Gobert weighed 241 pounds and her blood pressure was 130/80 (Tr. p. 303).  In June 2009, it was noted that Gobert was not taking her Coreg; her blood pressure was 111/66 (Tr. p. 301).

In March 2010, Gobert weighed 252 pounds and her blood pressure was 126/68 (Tr. p. 304).  In May 2010, Gobert's blood pressure was 115/75 and she weighed 256 pounds (Tr. p. 305).  In September 2010, Gobert went to the emergency department, reporting she was "near syncope;" Gobert was found to be hyperventilating and anxious (Tr. p. 332).  In October 2010, Gobert had a normal echocardiogram (Tr. p. 322).

---

occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships; a score of 51-60 represents moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR, at 34.  Also, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

## 2. 2008 Administrative Hearing

At her May 2008 administrative hearing, Gobert testified that she was 45 years old, 5'5" tall, weighed 256 pounds, and had graduated from high school (Tr. pp. 352-353).  Gobert testified that she last worked as a receptionist at a hospital, but can no longer do that type of work because using her arms to do paperwork makes her neck and head hurt (Tr. p. 353).

Gobert testified that she has herniated discs in her back, degenerative disc disease in her neck and back, neuropathy in her neck and back, high blood pressure, depression, mood disorder, and migraine headaches (Tr. p. 353).  Gobert testified that she has a migraine one to two times a week; when she has a migraine, she goes into a room without noise or light (Tr. p. 353).  Gobert testified that, three to four days per week, her medications make her drowsy and disoriented, and unable to concentrate (Tr. pp. 354, 358). Gobert testified that she only sleeps three to four hours at night, so she takes two to three hour naps during the day about three times a week (Tr. pp. 354-355).  Gobert sleeps in her recliner (Tr. p. 355).

Gobert testified that, during the day when her back starts hurting from sitting too long, she usually alternates sitting in her recliner and watching TV with walking through the house (Tr. p. 355).  Gobert testified she can usually sit for 30 minutes to an hour before she has to get up and move around, can stand in one place for about 20 minutes, and can walk for half a block to a block, depending on whether she's having a good day or a bad day

9

(Tr. pp. 355-356).

Gobert testified that, most of the time, her neck pain is a 10/10; it is a dull, burning ache in the back of her neck that radiates to the left side and down her left arm (Tr. p. 356). Gobert testified that her neck pain causes numbness and tingling in her left arm, hand and fingers, affects her ability to grasp, hold, and pick things up with her left hand, and she is unable to open jars with her left hand (Tr. p. 356).

Gobert testified that her low back pain is usually 8-10/10, and it is sharp, throbbing, and sends a numb, burning feeling down her left leg, and has caused her to fall several times when her left leg gives way; since Gobert was prescribed a walking cane, she has only fallen once (Tr. p. 357). Gobert testified that her depression causes her to stay in most of the time, and to have crying spells and angry outbursts (Tr. p. 357). Gobert testified that she also has a mood disorder which causes her moods to change dramatically very quickly (Tr. p. 358).

Gobert testified that her physical condition has gradually worsened since 2005, and that makes her depression and mood disorder worsen (Tr. pp. 358-359). Gobert testified that her doctors told her she cannot work, and have not told her she can return to work (Tr. p. 359).

### 3. March 2011 Administrative Hearing

At her March 2011 administrative hearing, Gobert's disability onset date was amended to December 6, 2005 (Tr. pp. 364-365). Gobert testified that she last worked about two months in 2008 as

a sitter for a young child (Tr. p. 367).  Before 2008, Gobert last
worked in September 1999 as a receptionist (Tr. p. 367).

Gobert clarified that her "receptionist" job at the hospital
did not really involve reception work; instead, she sat in a back
room and made copies, alphabetized papers, and shredded papers (Tr.
pp. 367-368).  Gobert testified that she worked at the hospital
from May 1998 through December 1998, when she had a car accident,
and was out until June 1999 when she returned to work (Tr. p. 368).
However, Gobert had a lot of back, neck and shoulder pain at work,
as well as migraines, and was unable to go to work everyday (Tr. p.
368).

Gobert testified that she lives in low income housing, gets
food stamps, and her sons pay her bills (Tr. p. 368).  Gobert also
testified that, when she stopped working in September 1999, she was
receiving Worker's Compensation and child support (Tr. pp. 369-
370).  Gobert began receiving Worker's Compensation in 1997, after
a car accident at work; the accident case settled in 2000, and
Gobert received about $17,000 (Tr. p. 370).  Gobert was involved in
another car accident in 2005, in a parking lot; Gobert sued the
other driver and received about $1500 in December 2005 (Tr. p.
371).

Gobert testified that she no longer works because sometimes
she cannot even dress herself (Tr. p. 372).  Gobert testified that
she has pain and problems with her arms, neck, back, lower back,
and left side extremities (Tr. p. 375).  Gobert testified that
sometimes she cannot use her left arm so she has problems dressing

herself and trying to clean herself in the bathroom, she has problems concentrating, she has a lot of confusion, and she is depressed and has suicidal thoughts (Tr. p. 375). Gobert testified that her neck pain is severe, which causes migraine headaches two to four times per week; she cannot tolerate noise or light when she has a migraine (Tr. pp. 375-376).

4. July 2011 Administrative Hearing

At the May 2011 administrative hearing, Gobert testified that she recently went to a cardiologist because her blood pressure was 178/100 and she was having chest pain; she received new blood pressure medication and was scheduled for an echocardiogram in July 2011 and a stress test in May 2011 (Tr. p. 384). Gobert testified that she was 5'5" tall and weighed 263 pounds (Tr. p. 387). Gobert testified that she takes Cymbalta for depression (Tr. pp. 385-386). Gobert testified that she thinks about suicide every two to three months (Tr. p. 386).

Gobert testified that she was tanned because she gets a lot of sun while driving (Tr. p. 385).

James Klein, a clinical psychologist, testified as an expert witness (Tr. p. 383). Klein testified that he had reviewed Gobert's medical records but had not personally evaluated Gobert (Tr. pp. 389-390). Klein testified that Gobert's depressive symptoms appeared to be related to her medical condition (Tr. pp. 390-391), but that her 2009 diagnosis, of mood disorder due to a general medical condition, should have included an explanation of the underlying medical condition (Tr. pp. 394). Klein testified

12

that the evidence of a mental health condition is very weak and not convincing, but that it is possible that she has a medication-induced depression due to taking both Percocet and Cymbalta every day (Tr. p. 192), and noted that no one had addressed the issue of the extent to which Gobert's taking Percocet and Cymbalta together contributed to her depression (Tr. p. 407). Klein further testified that Gobert's general mental assessments were really "not that bad" (Tr. p. 395). Klein explained that Gobert's GAF scores of 58 means that Gobert has moderate difficulty in social functioning (Tr. p. 408), and agreed that Gobert would have moderate problems interacting with other people and doing activities that require thinking, concentration and focus (Tr. p. 406).

Dr. Kweli Amusa, an internist (Tr. p. 382), testified at the hearing that, from 2005 to the present, Gobert suffers from non-severe impairments including hypertension, mitral valve prolapse, and borderline diabetes (Tr. p. 410). Dr. Amusa testified that Gobert has severe impairments of chronic pain in the back, neck and legs, morbid obesity (with a fairly consistent BMI greater than 40), and depression (Tr. pp. 410-411). Dr. Amusa noted that Gobert's chronic pain has been treated with steroid injections, physical therapy and pain management, that Cymbalta helps with both her depression and her pain, she uses a cane to ambulate, and she limps when she walks (Tr. pp. 411-413). Dr. Amusa testified that Gobert's severe impairments do not meet or equal a listing, but she is restricted to sedentary work, may need to use a cane when she is

13

having difficulty ambulating, may need to alternate positions while sitting, should alternate sitting and standing as needed for comfort, should avoid ladders, ropes and scaffolds, should not attempt to balance, can only occasionally stoop, kneel, crouch, and crawl, should only occasionally reach overhead, and should avoid concentrated exposure to extreme cold and humidity (Tr. pp. 412-414).  Dr. Amusa also explained that Gobert suffers from chronic pain, as demonstrated by the fact that she has been prescribed narcotics and muscle relaxers to take on a daily basis (Tr. pp. 417-419).  Dr. Amusa testified that several of Gobert's medications have side effects of drowsiness and sedation which can cause problems with focus, concentration and memory (Tr. pp. 421-422).

The VE[5] testified that Gobert has worked as a hospital cleaner (medium, unskilled, SVP 2, DOT 323.687-010), and a general clerk (light, semi-skilled, SVP 2, DOT 209.562.010) (Tr. p. 423).  The ALJ posed a hypothetical involving a 42 year old individual of Gobert's work history and education background, who can do sedentary work, must alternate sitting and standing every hour or so for a few moments, can never balance, can occasionally stoop,

---

[5] VE Wendy Klamm submitted a curriculum vitae which shows that her license to practice as a professional vocational rehabilitation counselor in Louisiana expired in 2006 (Tr. pp. 127-130).  See also, the licensee database in the Louisiana Vocational Rehabilitation Counselors, Board of Examiners website, http://www.lrcboard.org/.  A person must be licensed by the Louisiana Board of Examiners to work as a vocational rehabilitation counselor in Louisiana.  La.R.S. 37:3441, et seq.  Although Klamm is certified as a vocational rehabilitation counselor by the "Commission on Rehabilitation Counselor Certification," that commission does not fulfill Louisiana's licensing requirements.  La.R.S. 37:3450.

kneel, crouch, and crawl, can occasionally climb ramps and stairs, can never climb ladders, ropes and scaffolds, can occasionally engage in overhead work activity, and must avoid concentrated exposure to cold or humidity (Tr. p. 423).  The VE testified that such a person could not perform her past relevant work, but could work as a sorter (sedentary, semi-skilled, SVP 3, DOT 209.022, 974 jobs in the state economy, 744, 285 jobs in the national economy), or a paramutual ticket checker (sedentary, unskilled, SVP 2, DOT 219.587-010, 990 jobs in the state economy, 69,610 jobs in the national economy) (Tr. pp. 423-424).

The ALJ posed a second hypothetical involving the same person except her age is 47, and adding the limitations that she must be able to alternate sitting and standing at will, and she must be able to ambulate for an undetermined period with the assistance of a cane once or twice a week (Tr. p. 424).  The VE testified that such a person can perform the same jobs as those listed for the first hypothetical (Tr. p. 424).  The VE further explained that Gobert held her general clerk job at the hospital long enough to acquire the skills necessary to perform SVP 3 work (Tr. pp. 425, 429).  The VE testified that, if the person has a moderate problem (one-third of the day) with concentration and focus, she would not be able to do the jobs listed (Tr. p. 429).  The VE also testified that if the person missed more than four days of work per month, she would not be able to keep her job (Tr. p. 429).

<u>ALJ's Findings</u>

To determine disability, the ALJ applied the sequential

15

process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Gobert (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Gobert has not engaged in substantial gainful activity since April 11, 2005 (the date she filed her application) (Tr. p. 13), and has a severe impairment of morbid obesity, but does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 13, 15). The ALJ also found that Gobert is unable to

16

perform her past relevant work as a hospital cleaner or a general clerk (Tr. p. 19).

At Step No. 5 of the sequential process, the ALJ further found that Gobert has the residual functional capacity to perform the full range of sedentary work except as reduced by her need to alternate sitting and standing periodically or at will, use a cane one to two times per week to assist in ambulating, can never balance, may only occasionally stoop, kneel, crouch, or crawl, may only occasionally engage in overhead work activity, may only occasionally climb ramps or stairs, can never climb ladders, ropes or scaffolds, and must avoid concentrated exposure to cold or humidity (Tr. p. 16).  The ALJ found that the claimant was a younger individual on the date her application was filed, has at least a high school education, and that transferability of job skills is not material (Tr. p. 19).  The ALJ concluded that there are a significant number of jobs in the national economy which Gobert can perform, such as sorter and paramutual ticket checker and, therefore, Gobert was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on July 11, 2011 (Tr. p. 20).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  McQueen v. Apfel, 168

F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981).  Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."   <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

Law and Analysis

Issue 1 - New Findings of Fact

Gobert contends the ALJ's finding that her impairments of degenerative disc disease and depressive disorders are non-severe is an error of law and is unsupported by substantial evidence. Gobert argues the res judicata applies to the ALJ's findings prior to remand, pursuant to Lively v. Secretary of Health and Human Services, 820 F.2d 1391, 1392 (4th Cir. 1987).

In 2008, the ALJ found that Gobert suffers from severe degenerative joint disease, headaches, obesity, and depression (Tr. p. 57).[6]  In 2011, on remand by the Appeals Council for a correct evaluation of Gobert's residual functional capacity, a different ALJ made new findings as to Gobert's impairments, and found Gobert's only severe impairment is morbid obesity (Tr. p. 20).

Res judicata is a common-law concept which prescribes that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Drummond v. Commissioner of Social Security, 126 F.3d 837, (6th Cir. 1997), quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414 (1980).  Congress has clearly provided by statute that administrative res judicata prevents reappraisal of both the Commissioner's findings and his decision in Social Security cases *that have become final*, 42 U.S.C. § 405(h),

---

[6] Interestingly, in 2002, the ALJ found that Gobert suffers from severe discogenic and degernative disc disease (Tr. p. 50), and in 2004, the ALJ found that Gobert suffers from non-severe degenerative changes of the cervical and lumbar spine (Tr. p. 35).

and the courts have readily applied res judicata to prevent the Commissioner from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding.  Lively v. Secretary of Health and Human Services, 820 F.2d 1391, 1392 (4th Cir. 1987), citing Gavin v. Heckler, 811 F.2d 1195, 1200 (8th Cir.1987).  Under 42 U.S.C. § 405(h), finality is given to findings, as well as decisions, made in previous proceedings between the parties.  Lively, 820 F.3d at 1392.  Principles of finality and fundamental fairness drawn from § 405(h) indicate that the Commissioner must shoulder the burden of demonstrating evidence, not considered in the earlier proceeding, that the claimant's had changed, in order to provide an independent basis to sustain a finding contrary to the *final* earlier finding.   Lively, 820 F.3d at 1392.   Also, Drummond v. Commissioner of Social Security, 126 F.3d 837, (6th Cir. 1997)("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.").

As explained above, the principal of res judicata explained in Lively applies to the Commissioner's *final* decisions.  In the case at bar, the first ALJ's decision was not adopted by the Commissioner; instead, the Appeals Council remanded the case to the ALJ.   Therefore, the first ALJ's decision did not become the final decision of the Commissioner.

However, in the case at bar, the ALJ must apply logical reasoning in his findings.  In the very similar case of Magee v. Astrue, 2012 WL 1156429 (S.D.Ind. 2012), the ALJ found Magee

suffers from severe impairments of obesity, irritable bowel syndrome, and seizure disorder in the first administrative proceeding but, on remand, changed her findings to show that Magee suffers from severe impairments of mild depressive disorder, generalized anxiety disorder, and dependent and paranoid personality disorder, and that he has non-severe impairments of obstructive sleep apnea, seizure disorder, and obesity. The Commissioner argued (as in the case at bar) that there is nothing in the regulations which requires an ALJ to reach the same conclusions on remand that she reached (at Step 2) with respect to each particular impairment at issue in the previous administrative proceeding. The court in Magee agreed, but reversed the Commissioner's decision, explaining that, although there may be sufficient evidence for an ALJ to reach the conclusion that Magee is not disabled, the ALJ still "must build an 'accurate and logical bridge from the evidence to his conclusion,'" quoting Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). The Magee court concluded:

> "[W]hen an ALJ reviews a nearly identical medical record twice, and reaches two distinct conclusions at two different steps in her analysis, there needs to be an explanation as to why she has altered her original conclusions. Without that, the inconsistency draws into question the entire chain of logic leading to her ultimate conclusion. Accordingly, the case must be remanded to allow the ALJ to reach and express a conclusion that is grounded in an evidentiary analysis that provides a logical thought flow."

In the case at bar, there were two different ALJs involved, but essentially the same period of time was reviewed. Gobert's

case was remanded to the ALJ by the Appeals Council for a correct determination of her residual functional capacity.  New medical records from 2008 and and 2009 were introduced, and medical experts testified.

The ALJ found, as to Gobert's pain and other subjective complaints:

"The claimant's overall credibility is diminished due to inconsistent information she provided regarding her work history.  ...Given the multiple dates of employment provided by the claimant throughout her claim and during the hearing, the undersigned finds the claimant is not fully credible.

"The objective medical evidence of record does not support the claimant's testimony concerning the severity of her pain and the extent of her physical limitations. ... [H]er treatment notes do not contain objective findings on physical examination that support the extent of her alleged pain symptoms or phsycial limitations, nor is there evidence or an opinion that correlates her reported symptoms and limitations to the mild degenerative changes shown in the May 2005 MRI.  Rather, the only findings noted during the claimant's physical examinations consist of subjective reports of pain with range of motion or tenderness in February 2007, March 2008, and February 2010.  With the exception of these few findings, the claimant's treatment notes simply provide a list of her complaints, her self-reported medical history, and diagnoses that include low back pain or chronic low back pain.  Given the lack of objective evidence to support the alleged severity of the claimant's sympotms, the undersigned finds the claimant's allegations are not entirely credible.

"Despite the absence of objective findings, the claimant reported 'unbearable' neck and back pain in April 2007 and requested a cane for ambulation.  Although later treatment notes reflect that she continued to use a cane for ambulation, the record contains no indication that the cane was ever actually prescribed or deemed medically necessary by a physician or any other medical professional.  The claimant's credibility regarding the extent of her pain and phsycal limitations is further diminished by the absence of any recommendation for surgical intervention or steroid injections, or for physical therapy after December 2005.  The absence of anything more than palliative care for the claimant's reported symptoms suggests that her pain is manageable

and that any resulting physical limitations are far from disabling.
"For the reasons previously discuss in Finding 2, the undersigned finds that the claimant's allegations regarding the limiting affects [sic] of depression are not fully credible. ...Notably, throughout the course of treatment, the claimant's progress notes generally reflect normal mental status examinations, with the claimant's memory, concentration, comprehension, judgment, and cognitive function appearing intact. The claimant's ultimate discharge from mental health treatment to the care of her primary care physician further supports a finding that the claimant's mental impairment is not as severe as alleged by the claimant. "[T]he undersigned affords great weight to Dr. Amusa's opinion and has considered it in arriving at the previously outlined residual functional capacity. ... "[T]he undersigned also affords great weight to Dr. Klein's opinion that the claimant's depression has resulted in no real limitations. ..."

The ALJ found Gobert only has one severe impairment, morbid obesity. However, Dr. Amusa testified at the 2011 hearing that Gobert has severe impairments of chronic pain (which is supported by her prescribed daily medication) and depression, as well as obesity, which, with her medications, limit her ability to work. Dr. Amusa further testified that Gobert's medication side effects would impair her concentration, focus and memory. Dr. Klein, the psychologist, testified that Gobert's GAF score of 58 means that Gobert has moderate difficulty with concentration, focus, and memory. Therefore, the uncontradicted medical evidence, as well as Gobert's testimony, indicates that Gobert has moderate limitations in her concentration, focus and memory.

The ALJ included all of the limitations that the medical expert, Dr. Amusa, testified would restrict Gobert's ability to work, given her severe impairments of morbid obesity, chronic pain, and depression, except for Gobert's medication side effects of

impaired concentration, focus and memory.

The ALJ erred in rejecting the opinions of the medical experts and substituting his own non-expert opinion as to the severity of Gobert's impairments.  ALJ's have been warned by the courts against "playing doctor" and making their own independent medical assessments.  <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002).  An ALJ does not have the medical expertise to substitute his opinion as to the nature of a claimant's medical complaints for the supported and unrefuted diagnosis of the treating physician, particularly one who, as in this case, is a specialist.  See <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002); <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990), cert. den., 502 U.S. 901, 112 S.Ct. 278 (1991).  Moreover, given the medical evidence in this case, the ALJ failed to build a "logical bridge" between the previous ALJ's finding that Gobert suffers from severe impairments of chronic pain, depression, and morbid obesity, and his own findings that Gobert's chronic pain and depression are no longer severe.  The ALJ's explanation that Gobert's complaints are not fully credible does not bridge the gap between the medical evidence and the ALJ's new findings.

The ALJ also failed to consider Gobert's medication side effects of impaired concentration, focus, and memory, despite the fact that the Appeals Council specifically ordered the ALJ to re-evaluate Gobert's residual functional capacity, taking into consideration her moderate functional limitations in concentration, persistence or pace (Tr. pp. 67-68).  On remand, an ALJ must take

24

any specific action ordered by the Appeals Council "and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).  The ALJ's failure to consider Gobert's moderate functional limitation in concentration, persistence or pace was inconsistent with his instructions from the Appeals Council.

Since the ALJ's erred in his findings as to Gobert's severe impairments and functional limitations, substantial evidence does not support the Commissioner's finding that Gobert can work as a sorter or a paramutual ticket checker.  Therefore, Gobert's case should be remanded to the Commissioner for further proceedings.

Issues 2 & 3 - Hypothetical Question

Next, Gobert contends the ALJ's hypothetical question to the VE was defective and, therefore, the VE's responses cannot support a finding of "not disabled."  Specifically, Gobert argues the ALJ erred in failing to include "moderate functional limitations in concentration, persistence and pace," caused by Gobert's depression, chronic pain and medication side effects, in the hypothetical to the VE.

Testimony from a vocational expert is substantial evidence when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's impairments.  Taylor v. Chater, 118 F.3d 1274 (8th Cir. 1997). Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his

25

representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, a determination of non-disability based on such a defective question cannot stand. <u>Boyd v. Apfel</u>, 239 F.3d 698, 706-707 (5th Cir. 2001), citing <u>Bowling v. Shalala</u>, 36 F.3d 431, 436 (5th Cir. 1994).

The ALJ erred in failing to include the limitations of impaired concentration, focus and memory in the hypothetical to the VE. Those limitations were caused by Gobert's severe impairments of chronic pain and depression and/or her medication side effects.[7] However, Gobert's attorney included those limitations in a question to the VE, in response to which the VE testified that the claimant would *not* be able to perform the jobs of sorter and paramutual ticket checker if she has moderate limitations in concentration, focus and memory.

Although the VE testified that the claimant would not be able to work as a sorter or a paramutual ticket checker if she has impaired concentration, focus and memory, the VE did not state (and was not asked) whether there are any other jobs which the claimant can perform given all of those limitations.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Gobert to a decision in her favor based upon the existing record. The record is simply

_____

[7] The regulations applicable to the Social Security Act establish that the ALJ must consider medication side effects when evaluating a claimant's symptoms. 20 C.F.R. §404.1529(c)(3)(iv).

inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Gobert can perform, given her true impairments.   Therefore, Gobert's case should be remanded to the Commissioner for further proceedings.

Issue 4 - SSR 00-4p

Finally, Gobert argues that the ALJ failed to comply with social security ruling SSR 00-4p, which states that the ALJ must ask the VE whether any possible conflict exists between the VE's testimony and the Dictionary of Occupational Titles.   Gobert contends that, although she is an unskilled worker, the VE testified that Gobert can perform the semi-skilled job of "sorter," which is SVP 3.

Gobert's attorney questioned the VE about Gobert's skills and the VE testified that Gobert acquired SVP 3 skills when she worked for more than three months as a general clerk for a hospital (Tr. pp. 4225, 429).   Therefore, Gobert has the skill level necessary to perform the semi-skilled job of sorter.

Since the potential conflict with the DOT was addressed and resolved in the administrative hearing, the ALJ did not contravene SSR 00-4p.   This issue is meritless.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Gobert's appeal be GRANTED, the final decision of the Commissioner be VACATED, and Gobert's case be REMANDED to the Commissioner of Social Security for further proceedings consistent with the views expressed herein.

27

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 22nd day of October 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE